## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUSAN STAROPOLI** *et al.*, | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **METROPOLITAN LIFE** | : | |
| **INSURANCE CO.** *et al.*, | : | **No. 19-2850** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                JUNE _____, 2020

Through her employer JPMorgan Chase Bank ("JPMorgan"), Susan Staropoli enrolled her husband in a life insurance policy originally issued through the Prudential Insurance Company of America ("Prudential") and, subsequently, the Metropolitan Life Insurance Company ("MetLife"). Ms. and Mr. Staropoli later divorced. Mr. Staropoli passed away in 2018. When Ms. Staropoli, on behalf of her children, filed a claim on Mr. Staropoli's life insurance, MetLife denied the claim, citing that ex-spouses were not eligible for coverage under the terms of the policy. Following an administrative appeal, Ms. Staropoli in her individual capacity and on behalf of her children sued JPMorgan and MetLife to recover for the policy benefits and for breach of fiduciary duty. JPMorgan and MetLife move to dismiss the amended complaint in its entirety.

For the reasons that follow, the Court grants the motions to dismiss.

### BACKGROUND

Susan Staropoli is employed by JPMorgan. Through JPMorgan's employee welfare benefit plan, Ms. Staropoli enrolled her then husband for $300,000 in supplemental dependent life insurance coverage. Prudential issued JP Morgan's group insurance policy and served as claims

administrator until December 31, 2016. MetLife became the issuer of the JPMorgan group insurance policy and took over as claims administrator on January 1, 2017.

While Prudential was still the claims administrator, Ms. Staropoli informed JPMorgan that she and Mr. Staropoli were getting a divorce. The two finalized their divorce on March 11, 2013. Ms. Staropoli notified JPMorgan of the finalized divorce in 2014 and provided the company with a copy of her divorce decree. Ms. Staropoli's benefits profile was updated and she designated her two children as beneficiaries of Mr. Staropoli under the policy. Plaintiffs claim that JPMorgan's computer network informed Ms. Staropoli that her children were the beneficiaries of any death benefits in the event of her Mr. Staropoli's death. They also claim that neither JPMorgan nor MetLife at any time informed Ms. Staropoli of any coverage problems or of an opportunity to convert Mr. Staropoli's policy to an individual policy and that representatives from both companies communicated orally and in writing to Ms. Staropoli that Mr. Staropoli was covered under the policy. Ms. Staropoli also continued to pay premiums.

Mr. Staropoli passed away on July 4, 2018, and Ms. Staropoli applied for death benefits on behalf of her children. MetLife denied Ms. Staropoli's claim on September 6, 2018, explaining that Mr. Staropoli was no longer an eligible dependent due to the divorce and the children were not the eligible beneficiaries of the death benefits.

Ms. Staropoli then contacted JPMorgan's Retirement Services Department, which confirmed that she had provided JPMorgan with a copy of the divorce decree on March 10, 2014, and JPMorgan had updated her employment profile on March 13, 2014. She also learned that, according to the company's records, JPMorgan had never sent her or Mr. Staropoli a letter informing them of their right to convert the policy. Ms. Staropoli also never received a letter or notification that MetLife and JPMorgan had discontinued the insurance coverage for Mr. Staropoli.

2

Following administrative procedures, Ms. Staropoli appealed MetLife's decision, arguing that MetLife and JPMorgan had breached their fiduciary duties and claiming detrimental reliance. While evaluating Ms. Staropoli's appeal, JPMorgan explained in an email communication to MetLife that there had been a break in Mr. Staropoli's coverage from March 11, 2013—the day of the divorce—until January 1, 2016, at which point Ms. Staropoli had re-enrolled in the coverage. JPMorgan claimed that it did not require employees to declare the name of the dependent for whom they were electing supplemental coverage, and so JPMorgan did not know for whom Ms. Staropoli was selecting coverage in 2016. JPMorgan concluded that email by asserting that it is incumbent upon the employee to ensure the dependent is eligible for the selected plan. Plaintiffs claim that JPMorgan's explanation to MetLife was incorrect and a plain examination of JPMorgan's computer network information shows that Mr. Staropoli was identified as the insured.

MetLife denied Ms. Staropoli's appeal. MetLife explained that it had ceased coverage of Mr. Staropoli under the policy after the divorce and Ms. Staropoli effectively endeavored to re-enroll Mr. Staropoli on January 1, 2016. MetLife claimed that because Ms. Staropoli did not appear to be remarried, it seemed she was attempting to enroll her ex-husband for dependent spouse life benefits, and he would not then have met the spousal eligibility requirement for coverage. As for Ms. Staropoli's children's beneficiary status, MetLife stated that the policy explicitly dictates that the insured employee is the beneficiary of dependent life insurance benefits, and any attempts by an employee to update the beneficiary designation would not have been noted. The children's claims were denied because the claim for benefits, if payable at all, could only be payable to Ms. Staropoli.

After the administrative denial, this suit ensued.

**LEGAL STANDARD**

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

"Generally, a court considering a motion to dismiss under Rule 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.* (U.S.A), 768 F.3d 284, 290 (3d Cir. 2014) (citation omitted). "However, the court may consider documents which are attached to or submitted with the complaint, as well as documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir. 2002)). "Similarly, 'documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Id.* (quoting *Pryor*, 288 F.3d at 560). Thus, here, the insurance policy and attendant forms may be part and parcel of the Court's analysis.

In evaluating the sufficiency of a complaint, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); see also *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported

4

conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted).

## DISCUSSION

The claims against JPMorgan and MetLife arise under ERISA § 502(a)(1)(B) for the denial of the $300,000 in benefits and § 502(a)(3) for alleged breaches of fiduciary duties. The defendants move to dismiss the amended complaint in its entirety.

## I.     Whether JP Morgan is a Proper Defendant

At the outset, JPMorgan claims that it is not a proper defendant in this action because it is not the plan administrator and it did not act in a fiduciary capacity. JPMorgan argues that the plan documents identify the JPMorgan Chase U.S. Benefits Executive, an individual, as the plan administrator and grant the plan administrator "complete authority in his or her sole and absolute discretion to construe and interpret the terms of the plans and any underlying policies and/or contracts, including eligibility to participate in the plans." JPMorgan Mot. to Dismiss Ex. 3 at 54. The plan documents also instruct plan participants that "[n]o person or group, other than the Plan Administrator . . . has any authority to interpret the plans listed in Your Guide to Benefits at JPMorgan Chase (or official plan documents) or to make any promises to you about them." *Id.* JPMorgan identifies that plan documents from 2014 also state that the plan administrator has delegated its authority and discretion to decide claims and appeals to the claims administrator, which at the time was Prudential and later MetLife. Such delegated authority and discretion

5

included "claims processing, claims investigation, claims control and daily plan administration."

JPMorgan Mot. to Dismiss Ex. 6 at 32.  In addition to the plain language of the plan documents,

JPMorgan argues that the amended complaint contains no facts alleging that JPMorgan held any

discretionary authority or performed anything more than ministerial and administrative functions.

Plaintiffs respond that discretionary control over the administration of benefits can take

different forms, such as determining eligibility, interpreting the policy in question, and providing

information about benefits.  They claim that JPMorgan consistently affirmed to Ms. Staropoli via

its computer network and premium deductions that Mr. Staropoli was covered under the policy.

They also cite a January 2019 letter from JPMorgan to MetLife explaining that "[u]pon notification

from the employee, the adult supplemental life insurance was discontinued.  The employee then

re-enrolled in the coverage at a later date."  Am. Compl. ¶ 28.  Plaintiffs claim that any such

reenrollment for Mr. Staropoli occurred through JPMorgan.

Plaintiffs also allege that:

> Defendants funded and administered enrollment, claims and benefits provided to
> JP Morgan employees by issuing the Policy that insured JP Morgan's employees
> and their dependents, including Ms. Staropoli and her family.  Defendants have,
> and at all relevant times had, the authority to grant or deny claims, including
> Plaintiffs' claim for benefits under the Policy.  MetLife and/or JP Morgan also have
> the authority to determine eligibility and, in doing so, they act as the Plan and claims
> administrator with respect to the Policy.

*Id.* at ¶ 54.

The proper defendant in an ERISA claim for wrongful denial of benefits is "the plan itself

or the person who controls administration of benefits under the plan."  *Evans v. Employee Benefit*

*Plan, Camp Dresser & McKee, Inc.*, 311 F. App'x 556, 559 (3d Cir. 2009) (citing 29 U.S.C.

§ 1132(a)(1)(B)).  "Exercising control over the administration of benefits is the defining feature of

the proper defendant under 29 U.S.C. § 1132(a)(1)(B)."  *Id.*

6

Here, Plaintiffs claim that both JPMorgan and MetLife have the authority to grant or deny claims and to determine eligibility, acting as the plan and claims administrator. However, the plan documents explicitly limit this authority to the JPMorgan Chase U.S. Benefits Executive as the plan administrator and to MetLife as the claims administrator. Furthermore, Plaintiffs do not allege any non-conclusory facts tending to show that JPMorgan exercised control over the administration of benefits. At most, Plaintiffs have alleged that after Ms. Staropoli informed JPMorgan of her divorce, Mr. Staropoli's adult supplemental life insurance was discontinued. Even assuming that it was JPMorgan that terminated the benefits, this act itself does not implicate any exercise of discretion on the part of JPMorgan. Rather, JPMorgan would have simply been ministerially applying the unambiguous neutral rules of the plan regarding eligibility of spouses and ex-spouses, i.e., that ex-spouses were ineligible for benefits under the plan. This allegation "fall[s] squarely within those activities that the Department of Labor has given as examples of ministerial acts," *Hocheiser v. Liberty Mut. Ins. Co.*, No. 17-6096, 2018 WL 1446409, at *8 (D.N.J. Mar. 23, 2018), specifically the "[a]pplication of rules determining eligibility for participation or benefits," 29 C.F.R. § 2509.75-8. "Orientation of new participants and advising participants of their rights and options under the plan" and "[c]ollection of contributions" are likewise ministerial acts. 29 C.F.R. § 2509.75-8.

"Since discretionary authority, responsibility or control is a prerequisite to fiduciary status, it follows that persons who perform purely ministerial tasks . . . cannot be fiduciaries because they do not have discretionary roles." *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 39 (3d Cir. 1991) (citing 29 C.F.R. § 2509.75-8). Because the plan documents do not grant JPMorgan discretionary authority and the facts alleged do not demonstrate that JPMorgan exercised discretion, the Court

concludes that JPMorgan is not a proper defendant to this action as structured and dismisses all claims against it.  *See, e.g.*, *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006).

## II.  Section 502(a)(1)(B) Claim for Benefits

A participant or beneficiary may bring a civil action under ERISA § 502(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quoting 29 U.S.C. § 1132(a)(1)(B)).  "To assert a claim under this provision, a plan participant must demonstrate that 'he or she has a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)).

Where the administrator has discretionary authority to determine eligibility for benefits or to construe terms of the plan, a denial of benefits challenged under § 502(a)(1)(B) is reviewable under an arbitrary and capricious standard.  *Id.*  "An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law," and it is "not arbitrary if it is reasonably consistent with unambiguous plan language." *Id.* at 121 (citations and quotations omitted).

Here, the plan's language permits employees to cover only spouses and children as dependents.  Plaintiffs acknowledge that "spouse" is defined as "lawful spouse."  Am. Compl. ¶ 10.  The plan also expressly states that insurance will end for an employee's dependent on "the date the person ceases to be a Dependent." *Id.* at ¶ 11.  Ms. Staropoli admits that she and Mr. Staropoli divorced in March 2013.  Therefore, under the terms of the plan, Mr. Staropoli ceased to be a "dependent" on the date of their divorce and his insurance coverage then ended.

Plaintiffs argue that even in light of this language, MetLife cannot deny their claim for benefits because the defendants breached their fiduciary duties. *See* Am. Compl. ¶ 44 ("The Plan's requirement that Ms. Staropoli be married to the insured should not operate as a blanket reason for denial where, as here, . . . JP Morgan and MetLife collected premiums on [] additional voluntary coverage and represented to Plaintiffs that they had effective coverage, and MetLife waited until the event triggering coverage had occurred and then denied the claim based on events Defendants knew of, or should have known of, prior to the triggering event. . . . As a result, Defendants must now pay the death benefits owed to Plaintiffs."). The defendants respond that an alleged breach of fiduciary duty does not entitle Plaintiffs to benefits under the plan pursuant to § 502(a)(1)(B) because "section 502(a)(1)(B) is unavailable in actions for breach of fiduciary duty." *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491, 1501 (3d Cir. 1994).

The Third Circuit Court of Appeals has "explicitly held that § 502(a)(1)(B) does not create a private cause of action for breach of fiduciary duty." *Michaels v. Breedlove*, No. 03-4891, 2004 WL 2809996, at *2 (3d Cir. Dec. 8, 2004) (citing *Haberern*, 24 F.3d at 1501). Ms. Staropoli cannot rely on an alleged breach of fiduciary duty to support a claim under § 502(a)(1)(B). To the extent Plaintiffs bring a standalone claim for breach of fiduciary duty pursuant to § 502(a)(3), that claim is addressed in Section III below.

Plaintiffs also claim that they are entitled to benefits under the plan because the plan's incontestability clause precludes MetLife from denying Plaintiffs' claim on the basis that Ms. Staropoli and Mr. Staropoli were no longer married. In relevant part, the incontestability clause states, "We will not use Your statements which relate to insurability to contest insurance after it has been in force for 2 years during Your life." Am. Compl. ¶ 13. Because more than two years passed between the date that Ms. Staropoli enrolled Mr. Staropoli and the date of Mr. Staropoli's

death in 2018, Plaintiffs claim that the incontestability clause precludes the defendants from denying their claim.

MetLife argues in part that the incontestability clause is inapplicable here because the clause explicitly relates to the use of a policyholder's statements, and MetLife did not rely on any statements from Plaintiffs in determining that their claim for benefits should be denied.  Rather, as Plaintiffs admit in their amended complaint, MetLife denied the claim because "the state of New Jersey Certificate of Death for Charles Staropoli, states his marital status at the time of his death on July 4, 2018 was 'divorced[,]'" and "due to the divorce, Mr. Staropoli was no longer considered an eligible dependent under the terms of the Plan at the time of his death."  Am. Compl. ¶ 20.  MetLife also points out that Plaintiffs do not allege that they made any statements, related to insurability or otherwise, to MetLife until Ms. Staropoli applied for benefits after Mr. Staropoli passed away.

Plaintiffs respond that although the incontestability clause states that it only applies to a policyholder's statements, other courts have interpreted similar incontestability clauses as preventing the denial of claims on eligibility of coverage grounds other than using a policyholder's statements.  They cite three cases for this proposition: (1) *Patterson v. Reliance Standard Life Ins. Co.*, 986 F. Supp. 2d 1140, 1149 (C.D. Cal. 2013); (2) *Reassure Am. Life Ins. Co.* v. *Midwest Res., Ltd.,* 2011 WL 672566, *4 (E.D. Pa. 2011); and (3) *Altman v. Nationwide Life Ins. Co.,* 1999 WL 269938, at *3 (E.D. Pa. Apr. 23, 1999).  Upon close analysis, however, it becomes clear that these cases materially differ from the matters now before this Court.

First, the incontestability clause in *Patterson* provided: "Any statement made in your application will be deemed a representation, not a warranty.  We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium."

986 F. Supp. 2d. at 1146. The *Patterson* clause does not permit the insurance company to contest the policy after two years for any reason other than non-payment of premiums. In contrast, the clause at issue here explicitly prevents MetLife from contesting the policy *only* on the basis of the policyholder's statements relating to insurability.

Second, *Reassure* was not an ERISA case. Rather, *Reassure* dealt with the application of Pennsylvania law and whether a life insurance company may dispute the validity of a policy for a lack of insurable interest as part of a stranger-originated life insurance scheme after the policy's contestability period had ended. Both Pennsylvania law and the narrow question addressed in that case are inapplicable here.

*Altman* is likewise inapplicable. As in *Patterson*, the incontestability clause in *Altman* prohibited the company from contesting the policy after two years for any reason other than the non-payment of premiums, whereas, again, the clause here prohibits only contesting the policy on the basis of the policyholder's statements relating to insurability. And like *Reassure*, *Altman* was not an ERISA case at all, but dealt with an interpretation of Pennsylvania law. Accordingly, *Altman* is not instructive on the issues currently before the Court.

Our court of appeals has explained that "[t]he award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997). Accordingly, the Court "must uphold a plan interpretation even if [it] disagree[s] with it, so long as the administrator's interpretation is rationally related to a valid plan purpose and is not contrary to the plain language of the plan." *Id.* (citing *Gaines v. Amalgamated Ins. Fund*, 753 F.2d 288, 288 (3d Cir. 1985)).

Here, the language of the plan plainly states, "We will not use *Your statements* which relate to insurability to contest insurance after it has been in force for 2 years during Your life." Am.

Compl. ¶ 13 (emphasis added).   In denying Plaintiffs' claim for benefits, by looking at the chronology of events presented at this stage of the case the Court sees that MetLife relied on public records that informed the company of Ms. Staropoli's and Mr. Staropoli's divorce, not any statements from Plaintiffs.[1]   Therefore, the Court concludes that the incontestability clause would not be triggered here and does not apply to support maintenance of this claim.

Under the unambiguous language of the plan, Mr. Staropoli became ineligible for the benefits in which he had been enrolled as of the day he and Ms. Staropoli divorced.   Plaintiffs have failed to state facts that could support a conclusion that MetLife's denial of benefits was not consistent with unambiguous plan language, was without reason, or was erroneous as a matter of law.   The Court dismisses the claim for benefits under § 502(a)(1)(B).

### III.     Section 502(a)(3) Claim for Breach of Fiduciary Duties

Plaintiffs also invoke § 502(a)(3)(b) against both defendants for breach of fiduciary duties and equitable relief.   Grouping the defendants together, they claim that JPMorgan and MetLife breached their fiduciary duties by: (1) misleading Plaintiffs by informing Ms. Staropoli that Mr. Staropoli was covered under the policy and accepting premiums for that coverage; (2) failing to notify Plaintiffs that they no longer qualified for life insurance upon the divorce, despite the defendants knowing or having constructive knowledge of the divorce; (3) failing to carefully review or investigate enrollment applications to determine that all intended beneficiaries were

---

[1]     Even if MetLife relied on a statement by Plaintiffs regarding Mr. Staropoli's eligibility, MetLife argues that the incontestability clause states, "We will not use Your statements *which relate to insurability* to contest insurance after it has been in force for 2 years during Your life,"  Am. Compl. ¶ 13 (emphasis added), and insurability is distinct from eligibility.  The plan documents support this conclusion.  *See* MetLife Mot. to Dismiss Ex. 3 at 4 (defining "Eligible Dependents" as "your spouse or domestic partner and your children (including children of your domestic partner" and separately defining "Evidence of Insurability" as "Information that must be provided to The Prudential Insurance Company of America, the claims administrator for the Supplemental Term Life Insurance Plan, before you can be approved for certain levels of coverage.").

eligible for coverage; (4) failing to anticipate that plan participants would be confused by the ability to enroll someone ineligible for benefits and failing to have a more proactive procedure in place that would ensure plan participants would only enroll individuals who were eligible for benefits; (5) failing to anticipate that plan participants would assume that benefits enrollment statements and premium deductions constituted approval of eligibility requirements; and (6) failing to notify Plaintiffs of their right to convert Mr. Staropoli's policy upon the divorce to an individual life insurance policy.

Because the Court has determined that JPMorgan is not a proper defendant to the first amended complaint, the Court addresses only the § 502(a)(3) allegations against MetLife. First, however, the Court addresses a preliminary question of whether Plaintiffs have sufficiently alleged an agency relationship between JPMorgan and MetLife for the purposes of imputing the knowledge of JPMorgan to MetLife.

**A.   Agency**

MetLife argues that Plaintiffs have failed to plead that it had any knowledge of Ms. Staropoli's divorce until it investigated Plaintiffs' claim for benefits after Mr. Staropoli's death. Plaintiffs allege that JPMorgan was an agent of MetLife, and therefore JPMorgan's knowledge of the divorce can be imputed to MetLife. MetLife responds that the agency theory fails because ERISA preempts common law principles of agency and Plaintiffs' allegations are only bare legal conclusions unsupported by any factual allegations demonstrating a principal-agent relationship.

The Supreme Court has ruled on facts similar to those here that state agency law allowing an employer to be deemed the agent of an insurer in administering group insurance policies was preempted by ERISA because it "relates to" employee benefit plans. *See UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 379 (1999). However, there remains the question of federal common law. *See Everett v. United of Omaha Life Ins. Co.*, No. 11-0926, 2013 WL 5570222, at *8 (M.D.

Pa. Oct. 9, 2013) ("Because an ERISA action involves a federal statute, courts apply the federal common law of agency, not state law, in order to obtain uniformity in agency determinations."); *see also Taylor v. Peoples Nat. Gas Co.*, 49 F.3d 982, 988 (3d Cir. 1995) (applying "the law of agency, as developed and interpreted as a matter of federal common law" in determining whether an individual "was acting within the scope of his authority as an agent of the defendants in making representations . . . regarding the possible retroactive application of [ERISA-governed] plan amendments under consideration by [] the plan sponsor").

The elements of federal common law agency are "(1) a manifestation of consent by the principal that the agent will act for it; (2) a consent to act by the agent; and (3) subjection to the control of the principal." *Everett*, 2013 WL 5570222, at *8 (citing Restatement (Second) Agency § 1(1)). Although the Supreme Court in *Ward* addressed an issue of state agency law, the Court's reasoning remains relevant:

> [D]eeming the policyholder-employer the agent of the insurer . . . would force the employer, as plan administrator, to assume a role, with attendant legal duties and consequences, *that it has not undertaken voluntarily*; it would affect not merely the plan's bookkeeping obligations regarding to whom benefits checks must be sent, but would also regulate the basic services that a plan may or must provide to its participants and beneficiaries.

*Ward*, 526 U.S. at 379 (emphasis added) (quotations omitted). If deeming a policy-holder employer the agent of the insurer results in the employer assuming a role that it has not undertaken voluntarily, then the employer cannot be said to have consented to act for the insurer or subjected to its control, and the elements of federal common law agency are unmet.

Relying on *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934 (9th Cir. 2017), which was an appeal from a bench trial, Plaintiffs argue that an insurer should be liable for the actions of employer plan administrators. However, in *Salyers* the Court of Appeals for the Ninth Circuit found that the employer had apparent authority specifically to enforce an evidence of insurability

requirement on behalf of the insurer. 871 F.3d at 940. In reaching this conclusion, the court explained that its "holding in this case does not mean that a policy-holder employer is always an agent of the insurer in every aspect of plan administration in which it participates." *Id.* at 941. Rather, "[t]he nature of the relationship between the employer and insurer and the nature of the interactions with the insured must be considered on a case-by-case basis." *Id.*

Here, Ms. Staropoli has failed to explain how the facts alleged demonstrate a relationship between JPMorgan and MetLife that satisfies the elements of federal common law agency. Although she asserts that the similarities between *Salyers* and the facts alleged here show that an agency arrangement has arisen, the Court disagrees. In *Salyers*, the insurer delegated to the employer "the task of flagging policies for missing evidence of insurability," the employer "was responsible for insuring that a statement of health or evidence of insurability accompanied [the plaintiff's] selection of coverage," the plan's "enrollment guide informed plan participants that the insurer used the statement of health form to determine whether to approve coverage," and the insurer "retained final say on the form and contents of the statement of health document [but] played no part in collecting it from plan participants." 871 F.3d at 940–41. Here, Ms. Staropoli claims she enrolled Mr. Staropoli through JPMorgan, that JPMorgan collected payments for MetLife, and that most communications related to benefits were provided to Ms. Staropoli through JPMorgan's computer network. Even if the Court were to follow the Ninth Circuit Court of Appeals' decision in *Salyers*, which it need not, that would not lead inexorably to a finding of agency under the facts alleged.

Plaintiffs also claim that they "are informed and believe, and on that basis allege, that at all times mentioned herein, each of the defendants was the agent, representative, co-conspirator, successor-in-interest, assignee or employee of each remaining defendant, and in doing the things

alleged herein was acting within the course and scope of such agency, representation, conspiracy, assignment and employment." Am. Compl. ¶ 5. However, this boilerplate "information and belief" allegation is only a bare legal conclusion, and the Court need not accept it as true.

Under the facts alleged, the Court finds that Plaintiffs have failed to plead agency.[2]

## B.     Sufficiency of Breach of Fiduciary Duty Allegations

The Court turns next to the merits of Plaintiffs' various allegations in support of their claim that MetLife breached its fiduciary duties. MetLife argues that all of Plaintiffs' allegations fail to state a claim.

### 1.     Misleading Statements of Coverage

First, Plaintiffs allege that MetLife breached its fiduciary duty by misleading them and informing Ms. Staropoli that Mr. Staropoli was covered under the policy and accepting premiums for that coverage. MetLife argues that this claim fails because Plaintiffs are wrongly treating the collection of premiums as an affirmative representation and relying on inapplicable agency principles to attribute to MetLife representations allegedly made by JPMorgan.

"To allege and prove a breach of fiduciary duty for misrepresentations, 'a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003) (quoting *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001)).

---

[2]     This conclusion is a familiar one to courts in this circuit. Although there is a "split in authority on the general issue of whether an employer is an agent of the insurer in performing duties of administering group insurance policies[,] . . . courts within this circuit have followed the majority rule" that "an employer does not act as the agent of an insurance company that has issued a group policy." *McBride v. Hartford Life & Acc. Ins. Co.*, No. 05-6172, 2007 WL 5185293, at *16 (E.D. Pa. Jan. 29, 2007). The Court does not find allegations here that compel it to depart from this rule.

Plaintiffs have adequately pled, and MetLife does not dispute, that MetLife acted in a fiduciary capacity after it became the claims administrator on January 1, 2017.  Therefore the first element is fulfilled.

As to the alleged misrepresentations, Plaintiffs claim that "all communications with Ms. Staropoli indicated that she was fully covered under the Policy," Am. Compl. ¶ 17, "MetLife and JP Morgan communicated orally and in writing to Ms. Staropoli that Mr. Staropoli was covered under the Policy," *id.* at ¶ 25, and "JP Morgan and MetLife collected premiums on that additional voluntary coverage and represented to Plaintiffs that they had effective coverage," *id.* at ¶ 44. Following the divorce, Plaintiffs pose that Mr. Staropoli became ineligible for the coverage in which he had been enrolled.  Therefore, any representations that Mr. Staropoli was covered under the policy would have been inaccurate.

However, an issue arises due to the structure of Plaintiffs' pleading.  MetLife argues that, "in violation of Rule 8(a), 'Plaintiff's complaint . . . lumps all of the defendants together and accuses every defendant of breaching all of the asserted fiduciary duties.'"  MetLife Mot. to Dismiss 23 (alteration in original) (quoting *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005)).  MetLife claims that "[s]uch tactics blatantly disregard the fact that JP Morgan and MetLife acted in different roles and at different times vis-à-vis the Plan" and asks the Court to "disregard this deliberate obfuscation."  *Id.*

The issue present here is not so much one of group pleading but one of sufficient notice of the allegedly improper conduct.  Plaintiffs make clear in their amended complaint and briefing on the motions to dismiss that they are relying on an agency relationship between JPMorgan and MetLife.  However, it is entirely unclear the extent to which their various allegations rely on these agency principles.  For example, the amended complaint alleges that "JP Morgan and MetLife

collected premiums on that additional voluntary coverage and represented to Plaintiffs that they had effective coverage." Am. Compl. ¶ 44. Yet the same paragraph of the amended complaint concludes, "*JP Morgan* collected the premiums and consistently informed Plaintiffs that Mr. Staropoli was covered under the Plan. As a result, *Defendants* must now pay the death benefits owed to Plaintiffs." *Id.* (emphasis added). This example represents a systemic pleading style throughout the amended complaint. Plaintiffs' allegations jump from alleging conduct of one defendant to allegations that both defendants are liable to allegations that each defendant is liable for the actions of the other. This, in turns, prevents necessary deconstruction to discern which allegations, particularly those related to communications with Plaintiffs, Plaintiffs attribute to MetLife by its direct actions or to JPMorgan and then to MetLife through principles of agency. Indeed, it is unclear if Plaintiffs allege that MetLife directly communicated with Plaintiffs at all, or if MetLife only accepted premiums.[3] *See, e.g.*, Am. Compl. ¶ 73 ("In effect, MetLife's

---

[3]         The Court notes that even if it were to put aside the allegations related to communications with Plaintiffs and focus only on MetLife's alleged collection of premiums, Plaintiffs' claim for misrepresentation would be dismissed for failure to state a claim. None of the cases on which Plaintiffs rely stand for the proposition that collection of premiums alone constitutes a material misrepresentation. *See Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 236–37 (3d Cir. 1994) (finding breach of fiduciary duty where the defendant misrepresented the type of benefits for which the plaintiff was eligible prior to enrollment and provided inaccurate information post-enrollment in response to an inquiry from the plaintiff); *Erwood v. Life Ins. Co. of N. Am.*, No. 14-1284, 2017 WL 1383922, at *1 (W.D. Pa. Apr. 13, 2017) (finding after a bench trial that the defendants had breached their fiduciary duty to the plaintiff "by misrepresenting and failing to adequately inform her of the need or the means to convert two group life insurance policies purchased by her now-deceased husband"); *Horan v. Reliance Standard Life Ins. Co.*, No. 12-7802, 2014 WL 346615, at *13 (D.N.J. Jan. 30, 2014) (finding sufficient allegations of breach of fiduciary duty where the plaintiff elected to port his group life insurance, the insurer knew of the plaintiff's circumstances, and the insurer "affirmatively and repeatedly represented to and told" the plaintiff that he had a certain amount of life term life insurance coverage).

         The Court has "discovered no precedent on whether the mere acceptance of premiums can constitute a material misrepresentation of continued coverage under ERISA." *Funicelli v. Sun Life Fin. (US) Servs. Co.*, No. 12-06659, 2014 WL 197911, at *7 (D.N.J. Jan. 14, 2014). Here, where Ms. Staropoli was informed by the plan documents that Mr. Staropoli's coverage would terminate upon the event of a divorce, Plaintiffs never informed MetLife of the divorce that rendered Mr. Staropoli ineligible for coverage, and MetLife had no independent knowledge of his ineligibility, the Court will not create such a rule. *See, e.g.*, *Galante v. Fin. Indus. Regulatory Auth., Inc.*, No. 16-5198, 2018 WL 2063748, at *9 (E.D. Pa. May 2, 2018) ("It is also undisputed that FINRA, not Sun Life, was the entity that accepted the insurance

continued acceptance of JPMorgan's premium deductions from Ms. Staropoli's paychecks was another material misrepresentation that Plaintiffs had bound coverage in the amount of $300,000."). If the Court cannot determine from the pleadings what actions MetLife is alleged to have taken, then MetLife cannot be said to be on notice of its allegedly improper conduct.

Based on the current pleadings, the Court has already rejected Plaintiffs' theory of agency, and the allegations against each defendant must be addressed separately. However, the tangled nature of Plaintiffs' allegations renders an accurate analysis of the misrepresentation claims against MetLife unachievable. Therefore, the Court concludes that Plaintiffs' misrepresentation allegations "fail to provide Defendants with the requisite notice of their allegedly improper conduct, in contravention of Rule 8(a)." *Pietrangelo*, 2005 WL 1703200, at *10 n.14. The claim for breach of fiduciary duty based on misrepresentation is dismissed.

### 2. *Failure to Disclose Post-Divorce Ineligibility*

Next, Plaintiffs allege that MetLife's failure to notify them that Mr. Staropoli no longer qualified for coverage after the divorce constitutes a breach of fiduciary duty. MetLife claims that all the alleged acts giving rise to this harm occurred prior to January 1, 2017, when MetLife took over the role of claims administrator from Prudential, and MetLife had no knowledge of the divorce until years later when Plaintiffs filed a claim for benefits in 2018.

---

premiums from Galante even after coverage ceased under the terms of the Policy. It was also FINRA that failed to notify Sun Life that Galante had ceased working and that he was to receive a conversion notice. Pursuant to the duties of FINRA and Sun Life as defined in the Policy and Agreement, Sun Life did not breach any duty owed to Galante when it continued to accept the monthly lump sum premium payments from FINRA, nor when it denied death benefits to Plaintiff after Galante died on the basis that he was uninsured under the terms of the Policy, despite receipt of his premiums."); *Funicelli v. Sun Life Fin. (US) Servs. Co.*, No. 12-06659 FLW, 2014 WL 197911, at *8 (D.N.J. Jan. 14, 2014) ("In the case now before the Court, Plaintiff could not have reasonably relied upon Defendant's continued acceptance of premiums as evidence of continued coverage, when the explicit language of the Plan in Plaintiff's possession indicates that coverage had terminated and could only be revived upon application accompanied by proofs provided by Plaintiff.").

"In every case charging breach of ERISA fiduciary duty, . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "Because an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, we must ask whether the entity is a fiduciary with respect to the *particular activity in question*." *Santomenno*, 768 F.3d at 291 (quoting *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011)).

Ms. and Mr. Staropoli divorced on March 11, 2013 and Ms. Staropoli provided proof of the divorce to JPMorgan's human resources department a year later on March 10, 2014. MetLife did not hold any role related to Plaintiffs' benefits until it became the plan's claims administrator almost three years later on January 1, 2017. Plaintiffs do not allege that they ever informed MetLife of the divorce prior to filing their claim for benefits in 2018 and, as analyzed above, they cannot rely on constructive knowledge through agency principals or principles. Therefore, as alleged, MetLife could not have breached a supposed fiduciary duty to notify Plaintiffs that they no longer qualified for life insurance following the divorce where MetLife was not a fiduciary at the time Ms. Staropoli provided notice of her divorce and where MetLife had no knowledge of the triggering event that rendered Mr. Staropoli ineligible for benefits. *See Jordan v. Fed. Exp. Corp.*, 116 F.3d 1005, 1015 (3d Cir. 1997) ("[A] fiduciary has a legal duty to disclose to the beneficiary *only those material facts known to the fiduciary but unknown to the beneficiary*, which the beneficiary must know for its own protection." ) (emphasis added) (quoting *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1182 (3d Cir. 1996)).

3.     *Failing to Review or Investigate Applications for Eligibility*

Plaintiffs also allege that MetLife breached its fiduciary duties by failing to carefully review or investigate enrollment applications to determine that all intended dependents and beneficiaries were eligible for coverage.  MetLife argues that these allegations fail to state a claim because the plan documents, which were provided to Ms. Staropoli, unambiguously placed the burden on employees to ensure that any dependents and beneficiaries they enrolled were eligible under the terms of the plan.

"ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits."  *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d 896, 902 (3d Cir. 1995) (citation omitted).  "ERISA plan 'participants have a duty to inform themselves of the details provided in their plans.'"  *Bicknell v. Lockheed Martin Grp. Benefits Plan*, 410 F. App'x 570, 575 (3d Cir. 2011) (quoting *Jordan*, 116 F.3d at 1016).

Here, the plan's language stated that divorce would cause a former spouse to become ineligible for coverage, and the distributed year-end bulletins for the plan (which "supplement[], clarify[y], and amend[] various sections of the Guide and the Summary Plan Descriptions") explicitly instructed:

> **IMPORTANT NOTE ON DEPENDENT ELIGIBILITY**
> You are responsible for understanding the JPMorgan Chase dependent eligibility rules and abiding by them.  Each year during your designated enrollment period, or within 31 days following a qualified status change, it is important that you review the firm's dependent eligibility rules and the status of your covered dependents, and make any necessary changes.  You can access the dependent eligibility requirements online via My Health.

JPMorgan Mot. to Dismiss Ex. 17 at 2.  Plaintiffs were fully informed that it was their responsibility, not MetLife's, to ensure eligibility for coverage.

Furthermore, MetLife argues that even if it altered the enrollment procedures after taking on the role of claims administrator in 2017, these changes would have had no impact on the facts alleged in the amended complaint.  Plaintiffs allege that Ms. Staropoli enrolled Mr. Staropoli for benefits prior to their divorce in 2013.  Mr. Staropoli's benefits were then terminated upon the divorce, and Mr. Staropoli was re-enrolled for coverage in 2016.[4]  Plaintiffs do not allege any subsequent actions related to enrollment.

"ERISA requires a plaintiff to show that the fiduciary's breach of its duty was a proximate cause of plaintiff's injury." *Flick v. Chartwell Advisory Grp. Ltd.*, No. 14-06953, 2015 WL 4041969, at *5 (E.D. Pa. July 2, 2015) (citing *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 424 (3d Cir. 2013)).  Here, under the facts alleged, any changes made to the enrollment procedures after MetLife became claims administrator in 2017 would have had no impact on Plaintiffs' alleged injury.  Therefore, they cannot state a claim for breach of fiduciary duty.

Finally, MetLife argues that it had no reason to further investigate the enrollment of Mr. Staropoli because MetLife was never put on notice of any eligibility issues, such as the triggering divorce event.  The Court agrees.  Certainly an insurer does not have an independent duty to monitor every insured's marital status.  Such a system would be entirely unworkable, if not wholly unachievable, which may explain why Plaintiffs have not identified any judicial decision holding otherwise.

The Court finds that Plaintiffs have failed to state a claim for breach of fiduciary duty based on MetLife's alleged failure to carefully review or investigate enrollment applications to determine that all intended dependents and beneficiaries were eligible for coverage.

---

[4] Plaintiffs do not allege how this re-enrollment occurred.  They do, however, cite multiple communications from the defendants stating that it was Ms. Staropoli who re-enrolled Mr. Staropoli in 2016.

4. *Failing to Have a Proactive Enrollment Procedure Anticipating Plan Participants' Confusion*

Plaintiffs also claim that MetLife breached its fiduciary duties by failing to anticipate that plan participants would be confused by the ability to enroll someone ineligible for benefits and failing to have a more proactive procedure in place that would ensure plan participants would only enroll individuals who were eligible for benefits.

As just explained, even if MetLife had made any changes to enrollment after January 1, 2017, these changes would have had no impact on Plaintiffs' alleged injury because they do not allege that they took any actions related to enrollment after that date. Because Plaintiffs' allegations fail to show that MetLife's alleged breach was a proximate cause of their injury, the Court dismisses this claim for breach of fiduciary duty.

5. *Failing to Anticipate the Plan Participants Would Interpret Benefits Enrollment Statements and Premium Deductions as Approval of Eligibility*

Next, Plaintiffs claim that MetLife failed to anticipate that plan participants would assume that benefits enrollment statements and premium deductions constituted approval of eligibility requirements. They claim that the defendants "owed Plaintiffs a duty to hire, train and supervise their personnel to anticipate confusion over eligibility for Plan benefits and coverage: 'because it is foreseeable if not inevitable that participants and beneficiaries will have questions for plan representatives about their benefits, our cases also recognize an obligation on the part of plan fiduciaries to anticipate such inquiries and to select and train personnel accordingly.'" Am. Compl. ¶ 60 (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 471 (7th Cir. 2010)).

However, Plaintiffs do not allege that they made any inquiries to MetLife about their benefits or Mr. Staropoli's eligibility at any time until they filed a claim for benefits after he passed away. The plan documents fully informed Plaintiffs that Mr. Staropoli would become ineligible for the benefits in which he had been enrolled in the event of a divorce, as well as the plan

participants' responsibility to ensure eligibility of all dependents.  The Court's research has not uncovered, nor have Plaintiffs identified, any support for the notion that a claims administrator's mere failure to anticipate that a plan participant might disregard the plain language of the plan and rely only on the issuance of enrollment statements and the acceptance of premiums as eligibility approval can constitute a breach of fiduciary duty, particularly where a plan participant's reliance under such circumstances would not be reasonable.  *See Funicelli*, 2014 WL 197911, at *8 (D.N.J. Jan. 14, 2014) ("Plaintiff could not have reasonably relied upon Defendant's continued acceptance of premiums as evidence of continued coverage, when the explicit language of the Plan in Plaintiff's possession indicates that coverage had terminated and could only be revived upon application accompanied by proofs provided by Plaintiff.").

Plaintiffs' claim for breach of fiduciary duty based on MetLife alleged failure to anticipate that plan participants would assume that benefits enrollment statements and premium deductions constituted approval of eligibility requirements is dismissed.

> 6. *Failure to Notify of Right to Convert Mr. Staropoli's Policy to an Individual Life Insurance Policy*

Finally, Plaintiffs claim that MetLife breached its fiduciary duty when it failed to notify them of their right to convert Mr. Staropoli's policy to an individual life insurance policy after he and Ms. Staropoli divorced.

"[A] fiduciary has a legal duty to disclose to the beneficiary *only those material facts known to the fiduciary but unknown to the beneficiary*, which the beneficiary must know for its own protection." *Jordan*, 116 F.3d at 1015 (emphasis added) (quoting *Glaziers*, 93 F.3d at 1182).  Here, as already explained, Plaintiffs have not alleged that MetLife knew of the Staropoli divorce.  Ms. Staropoli, however, was fully informed by the plan documents that she had a right to port or convert Mr. Staropoli's coverage in the event of a divorce.  *See* JPMorgan Mot. to Dismiss Ex. 5

24

at 5 ("In the event of a divorce or your death, your covered spouse/domestic partner can port dependent supplemental term life insurance and/or dependent AD&D coverage.  Otherwise, dependent supplemental term life insurance can only be converted to an individual policy."). Plaintiffs have failed to plead a breach of fiduciary duty for MetLife's failure to disclose that Ms. Staropoli had become entitled to a right to convert Mr. Staropoli's policy because MetLife did not know the material fact that the Staropolis had divorced, let alone any material facts that were also unknown to Plaintiffs.

Plaintiffs' claim also fails because they have not alleged proximate cause.  Under the plan's conversion privilege, Plaintiffs' right to convert Mr. Staropoli's policy expired 92 days after the divorce, which was finalized on March 11, 2013.  *See* JPMorgan Mot. to Dismiss Ex. 9 at 14, 20, 25.  MetLife did not become claims administrator and a fiduciary until January 1, 2017.  Even if MetLife had informed Plaintiffs of their right to convert the policy on January 1, 2017, Plaintiffs' right to do so would have already expired long before.  Therefore, MetLife's alleged failure to disclose had no impact on Plaintiffs' alleged injury, and Plaintiffs have failed to allege proximate cause.

For these reasons, Plaintiffs' claim that MetLife breached its fiduciary duty by failing to notify them of their right to convert Mr. Staropoli's policy is dismissed.

## IV.     Equitable Estoppel and Waiver

In addition to their claims for benefits and breach of fiduciary duties, Plaintiffs allege that because MetLife's continued acceptance of premiums confirmed the existence of coverage, the doctrines of equitable estoppel and waiver prevent it from now asserting lack of coverage to deny the benefits.  MetLife claims that both arguments fail.

A.      **Equitable Estoppel**

To state a claim for equitable estoppel under ERISA, Plaintiffs must allege "(1) a material representation, (2) reasonable and detrimental reliance upon that representation, and (3) extraordinary circumstances." *Burstein*, 334 F.3d at 383 (quoting *Curcio*, 33 F.3d at 235). To survive a motion to dismiss, Plaintiffs' "equitable estoppel claim must include all three elements." *Funicelli*, 2014 WL 197911, at *7 (citations and quotations omitted). Plaintiffs "bear the burden of proof on each estoppel element." *Id.* (quoting *Int'l Union, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 152 (3d Cir. 1999)).

"First and foremost, [Plaintiffs have] alleged no extraordinary circumstances." *Burstein*, 334 F.3d at 383. The court of appeals in this circuit has held that "extraordinary circumstances generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Id.* (quoting *Jordan*, 116 F.3d at 1011); *see also Horan*, 2014 WL 346615, at *14 ("The Third Circuit has required a showing of affirmative acts of fraud or similarly inequitable conduct by an employer to satisfy this element.").

Here, Plaintiffs allege that MetLife's continued acceptance of premiums amounted to an affirmative representation that Mr. Staropoli was covered under the policy. They also allege that MetLife communicated orally and in writing that Mr. Staropoli was covered under the policy. However, nowhere do Plaintiffs allege that MetLife had knowledge that Ms. Staropoli and Mr. Staropoli had divorced. Therefore, even taking Plaintiffs' allegations as true, which the Court must at this stage, MetLife can hardly be said to have acted in bad faith or conducted itself insidiously where it was never aware of the triggering event that rendered Mr. Staropoli ineligible

for coverage. Plaintiffs have failed to state a claim for equitable estoppel. [5] *See, e.g.*, *Horan*, 2014 WL 346615, at *14.

### B.    Waiver

In support of their waiver claim, Plaintiffs allege that "[c]ourts have applied waiver and estoppel where the insurer accepted premium payments with the knowledge that the insured did not meet the requirements for coverage." Am. Compl. § 69. To bring MetLife under the umbrella of this claim, Plaintiffs state that "a principal cannot argue ignorance of a lack of coverage where its agent had such knowledge." *Id.*

MetLife responds that it had no knowledge of its right to deny a claim for lack of dependent eligibility at any time while premiums were collected because it was never notified of the divorce, and agency principles do not apply because MetLife and JPMorgan did not have a principal-agent relationship.

"Of course, a waiver of ERISA rights must be made 'knowingly and willfully.'" *Calvitti v. Anthony & Sylvan Pools Corp.*, No. 07-3196, 2008 WL 11451228, at *3 n.6 (E.D. Pa. June 3, 2008) (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988)), *aff'd*, 351 F. App'x

---

[5]     Plaintiffs claim that they have adequately pled equitable estoppel "[u]nder directly applicable Third Circuit precedent" and rely on *Curcio v. John Hancock Mutual Life Insurance Co.*, 33 F.3d 226 (3d Cir. 1994), and *Smith v. Hartford Insurance Group*, 6 F.3d 131 (3d Cir. 1993). However, *Curcio* and *Smith* are factually distinct from the allegations Plaintiffs have raised. *Curcio* and *Smith* involved pre-enrollment misrepresentations on which the plaintiffs detrimentally relied in selecting coverage. Although post-enrollment misrepresentations were also alleged in both cases, these misrepresentations either simply "compounded" the defendants' earlier and more material errors, *Curcio*, 33 F.3d at 238, or followed numerous diligent inquiries about coverage, *Smith*, 6 F.3d at 134.

In contrast, here Plaintiffs were provided with accurate information prior to enrollment that ex-spouses were not covered under the plan and any spousal coverage would terminate upon the event of a divorce. Although Plaintiffs claim they received assurances that Mr. Staropoli was still covered after the divorce, these assurances were not made in response to any inquiries Plaintiffs made to MetLife related to coverage (indeed, Plaintiffs' allegations include no statements to MetLife until they filed a claim for benefits in 2018), and these representations took the form of payment collections or JPMorgan's computer network showing Mr. Staropoli as the insured under the policy. These facts as alleged do not rise to the level of the "extraordinary circumstances" at play in *Curcio* and *Smith*.

651 (3d Cir. 2009).  Even the cases on which Plaintiffs rely to support their waiver claim explain that knowledge is necessary for a finding of waiver.  *See Salyers*, 871 F.3d at 938 ("Courts have applied the waiver doctrine in ERISA cases when an insurer accepted premium payments *with knowledge* that the insured did not meet certain requirements of the insurance policy.") (emphasis added) (citations omitted); *Pitts By & Through Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991) ("Waiver is the voluntary or intentional relinquishment of a *known right*.") (emphasis added) (citations omitted).

Here, the Court has already ruled that Plaintiffs have failed to allege an agency relationship between MetLife and JPMorgan or that MetLife had any independent knowledge of the divorce. Therefore, even if MetLife accepted premiums, it did not do so with the knowledge that Mr. Staropoli was ineligible for coverage, and it cannot be held to have waived its right to deny Plaintiffs' claim on the basis of that ineligibility.  Plaintiffs' claim of waiver is dismissed.

## V. Exhaustion

Finally, the defendants claim that Plaintiffs have failed to exhaust their administrative remedies.

"The ERISA exhaustion requirement is an affirmative defense, so the defendant bears the burden of proving failure to exhaust."  *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015) (citing *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007)).  The exhaustion defense is "typically resolved on summary judgment" and "is not generally the basis for dismissal under Rule 12(b)(6)."  *Id.* at 280 n.5 (citation omitted).  "Whether failure to exhaust 'may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.'"  *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

Furthermore, "ERISA's exhaustion requirement bears all the hallmarks of a nonjurisdictional prudential rule." *Price*, 501 F.3d at 279. "In addition to being judge-made, the doctrine's futility exception involves a discretionary balancing of interests. Judicial prudence, not power, governs its application in a given case." *Id.*

Here, the defendants argue that Plaintiffs allege that they filed a claim and appeal with MetLife, but the language of the plan states that claims and appeals relating to eligibility and general plan operations must be directed to the appropriate plan administrator, which was the JPMorgan Chase U.S. Benefits Executive, not MetLife. However, an examination of the same plan document shows that Plaintiffs were also informed, under the heading "Other Important Information," that "[t]he Plan Administrators have delegated their discretion to decide claims and appeals to the claims administrators and to the Heath and Income Protection Plans Appeals Committee and the Short-Term Disability Plan Appeals Committee, as described in this Guide." JPMorgan Mot. to Dismiss Ex. 4 at 33.

The plan document instructs plan participants that "[i]f you receive a notice that your claim has been denied, either in full or in part, the notice will explain the reason for the denial, including references to specific plan provisions on which the denial was based. . . . *The notice will also tell you how to request a review of the denied claim* and the time limits applicable to those procedures." *Id.* at 11. Plaintiffs have identified that the claim denial letter sent to Ms. Staropoli specifically directed her to "submit a written request for appeal *to MetLife*." MetLife Mot. to Dismiss Ex. 11 at 2.

Although Ms. Staropoli does not allege that she filed a claim or appeal with the plan administrator, the Court finds that the exhaustion defense raised by MetLife is not established here. Nor would it be fair to invoke this judge-made doctrine where Plaintiffs submitted a claim and

29

followed the instructions of the claims administrator, to which the plan administrator had delegated authority to decide claims and appeals, in seeking review of their claim denial. *See Campbell v. Sussex Cty. Fed. Credit Union*, 602 F. App'x 71, 75 (3d Cir. 2015) ("Sussex's argument that Campbell should have appealed any initial denial of benefits to Sussex's Secretary also fails to carry the day. Under Department of Labor regulations, when a plan administrator 'fails to establish or follow claims procedures' in denying a claim for benefits, the 'claimant shall be deemed to have exhausted the administrative remedies under the plan.'") (citing 29 C.F.R. § 2560.503-1(l)); *Ruiz v. Campbell Soup Co.*, No. 13-2634, 2014 WL 6885961, at *7 (D.N.J. Dec. 4, 2014).

## CONCLUSION

For the foregoing reasons, the Court grants the motions to dismiss of JPMorgan and MetLife on the bases discussed. An appropriate order follows.

**BY THE COURT:**

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

30